• FRUGÉ; Judge.
The plaintiff herein filed suit seeking an injunction under LSA-R.S. 3:2221 et seq. in an effort to have the defendant pen certain of his cattle for the purpose of Bru-cellosis testing. The defendant filed numerous exceptions to the plaintiff’s petition, among which were lack of procedural capacity and no right or cause of action. The trial judge referred all exceptions to the merits. At the trial, the plaintiff showed that the cattle in question were tested on three separate occasions and that on every one of these occasions, there was a showing of positive findings of Brucello-sis. In a written opinion the trial judge stated that although he felt the evidence was sufficient to grant the relief sought, the lack of procedural capacity as excepted to by the defendant had merit, and therefore the plaintiff’s petition was dismissed without prejudice. We reverse.
In order to clarify the duties and powers of the Commissioner of Agriculture with regard to the work performed by the Louisiana Livestock Sanitary Board, it is necessary to discuss briefly the history of LSA-R.S. 3:2091.
In 1908 the Legislature passed Act No. 274, § 1, which created the Louisiana State Livestock Sanitary Board.
Later by Act No. 57 of 1948, the Sanitary Board, as well as several other boards *758 and agencies, were consolidated and merged into the Department of Agriculture and Immigration. Section 2(6) of that act stated:
“The Live Stock Sanitary Board, under Act No. 274 of 1908, ... or under any other law (shall) be exercised by and at the discretion of the Commissioner of Agriculture and Immigration upon the recommendation of said Board, subject to the approval or disapproval of the Governor of the State of Louisiana.”
In that same session the Legislature passed Act No. 104 to amend and re-enact Sections 1, 2, and 3, of Act No. 274 of 1908. This amendment dealt with the changes in membership, headquarters, terms of office, and the compensation to be received by those officers, etc. Nothing was mentioned therein of the powers of the Commissioner as granted in Act No. 57 of that same session.
Act No. 425 of 1952, which amended LSA-R.S. 3:2091 and 2093, (which statutes were derived from those acts above discussed), dealt also with membership of the Board, selection of employees by the Commissioner, and selection of an executive secretary for the Board. Again nothing was mentioned or contained therein relative to the powers of the Commissioner as granted by Act No. 57 of 1948.
In 1970, Act No. 512 was passed. Once more the Legislature amended the statute in question only to change the membership, the terms of office, voting powers, etc. Section 2 of that act stated that “all laws or parts of laws in conflict herewith are hereby repealed.” We find nothing in this act which would conflict with the general provision granting certain powers to the Commissioner of Agriculture.
It seems evident to this court that the Legislature never intended to divest the Commissioner of Agriculture, under whose general department the Louisiana State Livestock Sanitary Board was placed, of the powers to execute and effectuate the several functions of that Board.
We agree with the appellee in his interpretation of LSA-R.S. 3:2095 in that the State Livestock Sanitary Board does have the power to deal with all infectious and contagious diseases of animals. This is obviously the duty of the Board. However, this section does not state that the Commissioner of Agriculture will no longer have the authority to institute suits in order to promulgate and enforce such rules and regulations as the Board deems necessary in order to control, prevent, and eradicate diseases of animals.
We find, therefore, that the plaintiff, Dave Pearce, as Commissioner of Agriculture and Immigration does have the procedural capacity to institute suit for the purpose of enforcing the laws which come under the realm of the Louisiana State Livestock Sanitary Board.
The appellee-defendant has urged alternatively, in the event we overrule his exception as to lack of procedural capacity, that we find valid and meritorious his exception of no right or cause of action. The defendant bases this exception on the plaintiff’s alleged failure to follow LSA-R.S. 3:2221. We find no merit in this argument.
The defendant states that Paragraph A of this statute provides that an authorized agent of the Board must give written notification of the Board’s request to have 'the defendant’s cattle penned for testing. Defendant states that nowhere in the plaintiff’s petition is it alleged that Mr. Wheeler, who notified the defendant as to the Board’s desire to pen the cattle in question, was an agent. As pointed out by the plaintiff, however, LSA-R.S. 3 :2093 states that the Commissioner of Agriculture and Immigration is empowered to employ a State Veterinarian, who shall be the executive secretary of the Livestock Sanitary Board. This, we think, obviously satisfies the agency relationship with regard to Mr. *759 Wheeler, who is the State Veterinarian, and the Livestock Sanitary Board.
The defendant also stated that Sub-Section B of R.S. 3:2221 states that evidence of infection is a finding of one or more reactors to the Brucellosis test on animals bred on the farm, at livestock auction, etc. It is asserted that the plaintiff never alleged nor proved consequently, that the animals in question were bred on the farm of the defendant. Again, as pointed out by the plaintiff, it is obvious that this is a misinterpretation of the statute. For sake of clarification, we quote Paragraph B of Section 2221 of Title 3 which states:
“Evidence of infection includes finding one or more reactors to an official brucellosis agglutination test on animals bred on the farm, at livestock auction market, at a slaughter establishment or concentration point, or upon official report of a positive brucellosis milk ring test of a dairy herd.”
To follow the defendant’s interpretation of this paragraph would mean that the plaintiff, in order to have the cattle of the defendant penned, would be required to prove that the animals in question were bred on the defendant’s farm or at a livestock auction market, or in a slaughter establishment, etc. One can easily imagine the difficulty with which the plaintiff would be forced to contend in order to prove that any animal was actually bred on the farm of the defendant. The Legislature could not have intended such. Nor can we take the position that they visualized cattle being bred in a livestock auction market or slaughter house. The irrationality of that contention is obvious. We think rather, as pointed out by the plaintiff, that the word “bred” was actually mispelled and should have been printed “bled”.* This gives the paragraph some sort of meaning, for the animals are actually “bled”, in order that the blood extracted may be tested.
The defendant has also stated that Paragraph C of LSA-R.S. 3:2221 has not been complied with in that the plaintiff has not asserted nor proved that the number of known infected herds in the parish have been reduced to fewer than 5% nor that the defendant had fewer than 15'% of his adult cattle officially tested in the last three years. This law is not relevant to the instant case. Paragraph C deals with so called “spot testing” of a preventative sort, in that the Sanitary Board may require an individual to.have his herd tested for Brucellosis at any time when the Board can prove that fewer than 5% of the cattle population in a given parish are known to be infected and that the herd in question has had fewer than 15% of its adult cattle officially tested within three years. The plaintiff, however, is seeking to test the cattle as authorized by Paragraph A which provides that any person who owns or has charge of cattle over eight months of age, which have shown evidence of Brucellosis infection, or have been exposed to this infection, can be forced to pen his cattle for testing. Since the defendant’s cattle did show evidence of Brucellosis infection, the owner may be required to have them penned.
For the foregoing reasons we find that the plaintiff does have the procedural capacity to institute this suit and in doing so has presented a valid cause of action; After a thorough reading of the record, we also find that the plaintiff has proved by a great preponderance of the evidence that the defendant has had a Brucellosis infected herd and should, therefore, be required to pen and restrain his cattle for Brucello-sis testing and identification according to law. We reverse the trial court’s finding of lack of procedural capacity therefore, and remand this case to that same court solely for its determination as to the date and time that the defendant shall be required to have his animals penned for testing.
Reversed and remanded.

 Acts 1966, No. 291 contains “bled”.